JEREMIAH MORRIS v. ISAAC SIMPSON, Executor of ELIAS
MORRIS, deceased.

AN action will not lie at the suit of a nephew against his uncle for board
and lodging without an express contract or promise on the part of the
latter to pay him for it. But if there is an express contract or promise
on the part of the latter to pay him for it. a legacy bequeathed to him in
the will of the latter will not be a payment, either in full, or in part of
the demand, unless it expressly appears in the will, or by manifest im-
plication, that such was the intention of the testator.

ASSUMPSIT with the usual pleas. The action was by
Jeremiah Morris against the executor of Elias Morris
deceased, for the board and nursing of the latter for a pe-
riod of five years next preceding his death. The proof was
that the deceased was afflicted with *elephantiasis* in one of
his ancles which had become so aggravated and offensive
from the putrid odor produced by it, that a tenant of his
refused to board him, and the plaintiff only consented to
do it when it was impossible for him to obtain board and
lodging elsewhere ; and that he sent a messenger to ask
the plaintiff to board him, and to tell him that if he would
do so, he would pay him well for it a short time before he
went there to board, but no price was mentioned by him,
nor was there any proof of any further understanding or

agreement between them in regard to that matter. All the witnesses, however, including several physicians who had attended him in the mean while, concurred in their estimate that it was worth as much as a hundred and fifty dollars per month, to board and nurse him and dress the ulcer during the time he was there. The plaintiff was a nephew of the deceased, and a legatee in his last will and testament to the amount of five hundred dollars, which was put in evidence by the defendant.

*J. H. Paynter*, for the plaintiff. The defence would be that the plaintiff and the deceased were near relations, and that the action would not lie without proof of an express promise by the deceased to pay the plaintiff for the board and services proved in the case. But even on that particular question, the rulings in this country, at least, had not been uniform, for it had been held in Massachusetts that a daughter may recover for services rendered in her father's family after her arrival at the age of twenty-one, without proof of any express promise, but upon an implied promise merely of the father to pay for them. *Gill v. Gill's Admr.* 15 *Pick.* 129. It had been repeatedly ruled, however, in this State, that as between such relations, an action of assumpsit will not lie for board and lodging without proof of an express promise to pay for them. *Cantine v. Phillips*, 5 *Harr.* 428. *Cannon v. Windsor*, 1 *Houst.* 143. Yet whilst they have so ruled, they clearly recognized and established the principle that it was for the jury to decide in every such case, whether there was any, or sufficient evidence before them to prove an express or actual promise by the defendant to pay for them; and with that ruling the counsel for the plaintiff were entirely content in the present case, for the evidence which they had just heard, was amply sufficient to warrant such a conclusion on their part.

*Moore*, (*Cullen* with him) for the defendant, contended that there was not sufficient evidence to prove an express

promise to pay for them, or such as the law required in such a case ; for the little that had been detailed by the only witness who had said any thing in relation to it, was too vague and indefinite to import such a contract or promise on the part of the deceased. *Add. on Contr.* 429. *Ch. on Contr.* 8. *Mariner's Admr. v. Collins,* 4 *Harr.* 290. *Cantine v. Phillips,* 5 *Harr.* 428. *Cannon v. Windsor,* 1 *Houst.* 143. 3 *Johns.* 534. 9 *Cush.* 17. 24 *Conn.* 362. The legacy bequeathed to the plaintiff by the deceased was considered by him to be a fair equivalent and full compensation for the favors done him by the plaintiff. But if the plaintiff could recover at all, he could recover only for the three years preceding the death of the deceased, as the statute of limitations had been pleaded in the case.

*Wright,* for the plaintiff. It was not necessary in such a case to prove a positive contract to pay a precise or specified price or sum per day, per week, per month, or per year in order to establish an express promise, or to entitle the plaintiff to recover in the action. All that was required in such a case, was an actual understanding between the parties that the service was to be rendered or performed by the plaintiff, and was to be paid for by the defendant, when the law would imply that the price to be paid was to be just and reasonable and a fair equivalent for the service rendered, according to the nature and the value of them under all the facts and circumstances proved. *Cannon v. Windsor,* 1 *Houst.* 143. *Cantine v. Phillips,* 5 *Harr.* 428. *Gill v. Gill's Admr.* 15 *Pick.* 129.

*The Court, Wales J., charged the jury.* That if the plaintiff and deceased had not been related to each other in any near or close degree of consanguinity, the only question in the case for them to consider and decide would have been the just and proper value of the board and lodging, services and attentions furnished and rendered by the plaintiff to the deceased, upon all the evidence

before them in regard to that matter. For, as between strangers in blood, the law would have implied under the same circumstances, a contract and promise on the part of the deceased to pay the plaintiff for them whatever they were reasonably worth at the time and under the circumstances and in the situation in which they were both then placed, in the absence of any actual agreement between them, as to the price to be paid for them ; the rule being well settled in such a case as we have just supposed, that where one person performs work and labor for another, or supplies him with board and lodging and necessary nursing and attention during illness, without any specific bargain or agreement as to the price to be paid for them, the former is entitled to demand, and the latter is bound to pay a fair and reasonable compensation for them. And this is what is meant and understood in law by the term implied contract, or promise to pay for them. But it has been held, and is now well settled in this, as well as other States, that when such work and labor is performed for, or such necessaries are supplied by one near relation to another, the law will presume that they were gratuitous favors merely, prompted by friendship, kindness, and the relationship between them, for which the one never expected to demand, nor the other to pay any price in money for them, and, therefore, it will not in such a particular case, imply a promise or contract on the part of such a relation so receiving such benefits or services to pay any thing for them ; but an express promise by the latter, or an actual agreement or understanding between them that he is to pay for them must be proved in order to entitle the other party to maintain an action at law upon it to recover compensation for them. It has been so ruled in this court in the cases of *Collins v. Mariner's Admr.* 5 *Harr.* 290. *Cantine v. Phillips*, 5 *Harr*, 428, and *Cannon v. Windsor*, 1 *Houst.* 146. And in the last two of them it is ruled and recognized in the following terms that in such a case, " it is but reasonable to require that there should be an express understanding between them to that effect. This

is what is meant by the distinction between an express and and an implied contract; and that does not mean a bargain in so many words to pay so much money weekly, but the recognition of this kind of understanding between them, as the admission of the party that he was a boarder and not a guest." Now, did any promise, agreement, or understanding exist between Jeremiah Morris, the plaintiff, and his uncle, Elias Morris, the deceased, in reference to the payment of board ? It is not necessary that the contract should be in writing, or that the agreement to pay for board should have been formally made with a stipulation as to the price to be paid for it. But you will discover if possible, what was the mutual knowledge and understanding of the parties in regard to his going to his nephew's house to board, and must derive your information on that, as well as on other points of the case, from the testimony of the witnesses. It appears from the evidence that up to the year 1861, the deceased kept house and was then a· widower, without children or any relation nearer of kin than his nephew, the plaintiff; and that he was aged, infirm and completely helpless. We are not informed why he gave up his own establishment and went to Mr. Cade's, but we are first introduced to him at his house, where the witness Rhodes paid him a visit, and at which interview the deceased requested him to go and ask Jeremiah Morris, the plaintiff, to " take him to board," and said " he would pay him, and pay him well, if he would," and added " if Jeremiah would not take him, he did not know but what he would have to go to the Alms House, which he did not want to do, if he could help it." The next witness, Jones, tells us that he applied to him a dozen times or more during the year 1861, to take him to board, but which he declined to do, and when he inquired of him if Jeremiah would not take him, he replied that " Jeremiah would take him, if no body else would." He also said " he would pay him, or any body else who would take him and keep him." He soon after that went to the house of the plaintiff in December 1861, and remained there until his

death in June 1867, receiving not only food and shelter, but also what was of equal, if not greater value to him, the nursing and attendance from the plaintiff and his wife which had been described in detail by the witnesses. The jury would consider these facts and determine whether they brought the case within the rule which had been stated, and whether they constituted an actual understanding or agreement, amounting to an express contract on the part of the plaintiff to take his uncle, the deceased, to board, and on the part of the latter to pay him for it, without any price mentioned, or stipulated, or agreed on between them in regard to it. If they should believe from the evidence there was not such an agreement or understanding between them, and that the plaintiff took him into his family without any thing said or done that would amount to a matter of actual contract between them, or an actual or express promise on the part of the deceased to pay him for his board whilst in his family, then the plaintiff had no cause of action and could not recover, and their verdict should be for the defendant. But if, on the contrary, they should believe from the evidence that there was such an actual understanding or agreement between them, or an actual and express promise by the deceased to pay the plaintiff for his board while in his family, he would be entitled to recover, and their verdict should be for the plaintiff, for such compensation as they might deem just and reasonable under all the facts and circumstances proved in the case, although no particular price or sum had been stated or agreed upon in the understanding between them in relation to the matter. This was not a question of board and lodging only, or of necessary nursing and attendance in connection with it, in an ordinary case of sickness and helplesness. The deceased, it appeared from the evidence, required almost constant personal attention from the first year of his residence with the plaintiff, in an extraordinary disease as offensive as it was uncommon in this country, and which became only the more urgent as well as offensive in its demands upon them, until death relieved

him from suffering, and his attendants from their patient and long continued attentions to him. But in assessing the damages in this, as in any other case, the rule by which they were to be guided was to ascertain what the board and services in the case were fairly and reasonably worth during the time he was in the plaintiff's family ; and upon that point they had the testimony of every witness who had been called to the stand, and from which they would be able to assess them to such an amount as in their judgment would be just and proper.

The legacy of $500 bequeathed in the will of the deceased to the plaintiff, which they had before them, was not to be deemed or taken to be a payment or credit, either in full, or in part, of the claim he now had against his estate and was prosecuting against his executor, unless it expressly appeared in the will, or by manifest implication from something contained in it, that such was the intention of the testator. *Rev. Code* 305. But as the statute of limitations had been pleaded in the action, if the plaintiff was entitled to recover on the grounds before stated, he he could only recover for the three years next preceding the institution of his suit, which was on the 21st day of September 1867.

The plaintiff had a verdict for $3465.00.